UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID CIRACI, et al., | ) | CASE NO.: 5:21CV2347 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| THE J.M. SMUCKER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on Motion by Plaintiffs for a Temporary Restraining Order. The Court has been advised, having reviewed the parties' motions and supporting affidavits, and having heard argument from the parties via a telephonic hearing conducted on December 21, 2021. For the reasons that follow, the motion is DENIED.

**I.  Facts**

Plaintiffs are numerous individuals that were employees of Defendant J.M. Smucker Company ("Smucker") at the time of the filing of the TRO motion. They seek to enjoin Smucker from enforcing its mandate that requires the employees to receive the COVID-19 vaccine. The TRO motion was filed on December 15, 2021 – the day before Plaintiffs were scheduled to lose their jobs for failing to receive the vaccine or receive an exemption from Smucker. The Court declined to issue an *ex parte* order and instead ordered expedited briefing. Smucker opposed the TRO motion on December 20, 2021, and the Court conducted a telephonic hearing on the motion on December 21, 2021. In the interim, consistent with the policy it set forth, Smucker terminated Plaintiffs Carla Grosjean, Stephanie Crookston, Andy Ruegg, Megan Morr, Christopher Conrad, and Joseph Adams and placed Plaintiff David Ciraci on unpaid leave.

II. **Law and Analysis**

When determining whether to issue a temporary restraining order or a preliminary injunction, this Court considers the following four factors:

> (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir.1995)). This Court must balance the four factors while noting that none should be considered a prerequisite to the grant of a preliminary injunction. See *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). Moreover, a plaintiff must present clear and convincing evidence in support of the four factors. *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267-68 (Ohio Ct. App. 2000).

A. **Likelihood of success on the merits**

Plaintiffs contend that they are likely to succeed on the merits of both their Title VII claim and their First Amendment claim. The Court now reviews those contentions.

Plaintiffs' Title VII claim is focused on allegations that Smucker failed to reasonably accommodate their religion and failed to engage in the interactive process. However, under Title VII, before filing a complaint in the district court, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC and obtaining a right-to-sue letter. 29 U.S.C. §§ 626(d)-(e); 42 U.S.C. §§ 2000e–5(e)–(f); *Randolph v. Ohio Department of Youth Services*, 453 F.3d 724, 731-732 (6th Cir. 2006). "An individual may not file suit under Title VII if she does not possess a 'right to sue' letter from the EEOC." *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir.

1999).  Therefore, the failure to timely exhaust available administrative remedies is an appropriate basis for dismissal of Title VII action. *Henderson v. Enter. Leasing of Detroit*, LLC, No. 13-14892, 2014 WL 1515828, at *3 (E.D. Mich. Apr. 18, 2014); *Abe v. Michigan Dep't of Consumer & Indus. Servs.*, 229 F.3d 1150 (6th Cir. 2000).  Herein, there is nothing in Plaintiffs' complaint or motion for TRO that suggests they have exhausted their administrative remedies.  Accordingly, there is not a likelihood of success on the merits of the Title VII claims pled in the complaint.

The Court notes briefly that it appears that Plaintiffs' Title VII claims would similarly fail on the merits.  For example, the United States Supreme Court has declined to find that an interactive process is required when evaluating religious accommodation requests.  "We accordingly hold that an employer has met its obligation under § 701(j) when it demonstrates that it has offered a reasonable accommodation to the employee." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (declining to find any obligation of "bilateral cooperation").  Moreover, the current record before the Court indicates that Plaintiffs declined to provide *any* information to Smucker to assist in evaluating the sincerity of their alleged religious beliefs.  Accordingly, it appears that they would also be unsuccessful on the merits of their failure to accommodate claim.

Plaintiffs also assert that they would likely be successful on claims tied to the First Amendment.  In that regard, Plaintiffs attempt to argue that by virtue of the federal government coercing Smucker to implement the vaccine mandate that Smucker has been transformed into a government actor rather than a private entity.  "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  It is under this theory that Plaintiffs contend Smucker should be treated as a government actor.

Plaintiffs effectively contend that Smucker only adopted its vaccine mandate because it was compelled to do so by mandates issued from the federal government. The Court has significant doubts regarding this theory both legally and factually. For example, when the federal mandates at issue were stayed, Smucker took no action at all. Moreover, Smucker announced its formal policy on October 11, 2021 – a date that does not correspond to any action by the federal government. Accordingly, it appears at this early stage of the litigation that Plaintiffs are unlikely to succeed on their First Amendment claims.[1]

B. **Irreparable injury**

Plaintiffs focus their alleged irreparable injury on the purported violations of their Constitutional rights. However, having found above that it is unlikely that Plaintiffs have a valid First Amendment claim against Smucker, they cannot rely on any presumption of irreparable harm. Moreover, the only other harm alleged is the loss of employment – a loss that is fully compensable through monetary damages and therefore not irreparable. As such, this factor also weighs against granting the motion.

C. **Substantial harm to others**

It appears to the Court on the current record that there would be harm to others if the Court granted Plaintiffs' motion. Compelling Smucker to reinstate Plaintiffs and allow them to work without a vaccination or a religious exemption would place the other employees at Smucker at risk. In effect, granting the TRO would directly undermine the goal of Smucker's policy and place its compliant employees directly at a higher risk of contracting COVID-19 in the workplace. Accordingly, this factor also weighs against granting injunctive relief.

---

[1] In passing, Plaintiffs suggest they will also succeed on the Emergency Use Authorization statutory claim. As the EUA statute does not apply to private actors, such a claim is similarly likely to fail. *See McCutcheon v. Enlivant ES,LLC*, 2021 WL 5234787, at *3 (S.D. W. Va. Nov. 9, 2021); *Bridges v. Houston Methodist Hosp.,* 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021).

D. **Public interest**

Plaintiffs are correct that protecting individual Constitutional rights serves the public interest. However, the record before the Court does not suggest that any of those rights have been infringed by Smucker. Moreover, a fellow District Judge has properly noted:

> No matter any individual stance on COVID-19, every person, including the parties in this case, can agree that ending the COVID-19 pandemic is in our collective best interest—and in the public's best interest, as well, for purposes of balancing equities. The CDC has consistently instructed that vaccines can reduce the risk of spreading the COVID-19 virus. The Court simply cannot find that enforcement of a policy that protects other employees and conforms to the guidance of the CDC is not in the public interest… As the court in *Beckerich* explained, "[a]ctual liberty for all of us cannot exist where individual liberties override potential injury done to others."

*Barrington v. United Airlines, Inc.*, No. 21-CV-2602-RMR-STV, 2021 WL 4840855, at *8 (D. Colo. Oct. 14, 2021). This Court agrees. Taking steps to ensure the safety of employees and assist in ending the pandemic are strongly in the public interest. As a result, this factor similarly weighs against granting Plaintiffs' requested relief.

III. **Conclusion**

The motion for a temporary restraining order is DENIED.

IT IS SO ORDERED.


Date: December 22, 2021                    /s/ Judge John R. Adams
                                                                        JUDGE JOHN R. ADAMS
                                                                        UNITED STATES DISTRICT COURT